UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

BERNARD W. GOONEWARDENA,                    :

                        Plaintiff,          :    09 Civ. 8244 (RA)(HBP)

     -against-                              :    REPORT AND
                                                 RECOMMENDATION
NEW YORK STATE WORKERS'                     :
COMPENSATION BOARD, et al.,
                                            :

                        Defendants.
                                            :
----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE RONNIE ABRAMS, United States District

Judge,


I.  Introduction


          Plaintiff Bernard W. Goonewardena, proceeding pro se,

commenced this action pursuant to 42 U.S.C. § 1983; Title VII of

the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et

seq.; the Age Discrimination in Employment Act of 1967 (the

"ADEA"), 29 U.S.C. §§ 621 et seq.; the Americans with Disabili-

ties Act of 1990 (the "ADA"), 42 U.S.C. §§ 12010 et seq.; the New

York State Human Rights Law (the "NYSHRL"), N.Y. Exec. L. §§ 290

et seq., and the New York City Human Rights Law (the "NYCHRL"),

N.Y.C. Admin. Code. §§ 8-101 et seq., against the New York State
Workers' Compensation Board (the "WCB") and Winston Farnum.

In an Amended Memorandum Order dated October 5, 2011,
the Honorable Laura T. Swain, United States District Judge, to
whom this case was formerly assigned, dismissed plaintiff's (1)
ADA, ADEA and Section 1983 Due Process claims in their entirety,
(2) NYSHRL and NYCHRL claims against the WCB and Farnum in his
official capacity, (3) Section 1983 Equal Protection claims
against the WCB and against Farnum for damages in his official
capacity and (4) Title VII claim against Farnum.  Goonewardena v.
N.Y. State Workers' Compen. Bd., 09 Civ. 8244 (LTS)(HBP), 2011 WL
4822553 at *6 (S.D.N.Y. Oct. 5, 2011) (Swain, D.J.).  Plaintiff's
remaining claims are his Title VII discrimination and retaliation
claims against the WCB and his NYSHRL, NYCHRL and Section 1983
discrimination and retaliation claims against Farnum in his
individual capacity.  By notice of motion dated September 9, 2014
(Docket Item ("D.I.") 122), defendants move for summary judgment
pursuant to Fed.R.Civ.P. 56, dismissing plaintiff's remaining
claims in their entirety.  For the reasons set forth below, I
respectfully recommend that defendants' motion be granted in part
and denied in part.

II.   Facts

Plaintiff's claims arise out of the termination of his employment as a probationary Compensation Investigator I ("CI 1")[1] with the WCB on July 2, 2008.

In 2007, as part of an effort to hire at least 22 new investigators, the WCB requested and was granted permission from the New York State Department of Civil Service to use its Civil Service CI 1 eligible list to identify eligible CI 1 candidates (Defs. 56.1 Stmt., ¶¶ 27, 30).  Plaintiff, a South Asian individual from Sri Lanka, was identified as an eligible candidate on the Civil Service CI 1 eligible list (Defs. 56.1 Stmt., ¶ 31).

In August 2007, plaintiff was interviewed by Farnum, who is of Barbados ancestry and who describes himself as having "skin [that] is brown, otherwise colloquially known as 'black'" (Affidavit of Winston Farnum, dated May 29, 2014 (D.I. 126) ("Farnum Aff."), ¶ 41), and other WCB employees (Defs. 56.1 Stmt., ¶ 32).  Plaintiff alleges that, during the interview, Farnum tried to discourage plaintiff from accepting a position

---

[1]A CI 1's duties include visiting local businesses to ensure compliance with the New York State Workers' Compensation Laws, drafting reports, serving legal documents in a timely manner and interacting with the public (Defendants' Local Civil Rule 56.1 Statement, dated September 9, 2014 (D.I. 128) ("Defs. 56.1 Stmt."), ¶¶ 2, 37).

with the WCB by noting that the duties of a CI 1 were "very simple" compared to plaintiff's duties at his prior job as an investigator for the New York State Insurance Fund (Plaintiff's Rebuttal to the Affidavit of Defendant Winston Farnum, dated December 14, 2015 (D.I. 155-2) ("Pl. Third Aff."), at 5[2]). Farnum, on the other hand, avers that, following plaintiff's interview, he recommended that plaintiff be hired as a probation-ary CI 1 (Farnum Aff., ¶ 5).

On or about September 18, 2007, the WCB hired plaintiff and two other individuals, Jamie Freeberg (neé Dybas)[3] and Josseth Henry, as probationary CI 1 employees in the WCB's Harlem Office (Defs. 56.1 Stmt., ¶ 33).  Plaintiff describes Freeberg as white and Henry as "Afro-Caribbean" (Pl. Third Aff., at 9). Plaintiff first reported for work on or about October 4, 2007 (Defs. 56.1 Stmt., ¶ 34).

According to plaintiff, Farnum informed plaintiff on plaintiff's first day at work that Farnum had preferred two other candidates of "African ancestry," Al John and Onyewuchi Echefu, for the position for which plaintiff was hired, but that John and

---

[2]Because plaintiff's submissions in opposition to defendants' motion for summary judgment lack consistent internal pagination, I use the page numbers assigned by the Court's ECF system.

[3]Plaintiff's opposition papers consistently refer to Freeberg by her maiden name -- Dybas.

4

Echefu turned down the position because the pay grade was lower than their current jobs (Plaintiff's Partial and Incomplete Brief without Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, dated December 15, 2015 (D.I. 154) ("Pl. Memo"), at 9-10).  Plaintiff further alleges that Farnum stated that once the pay for CI 1 was increased, John and Echefu would accept CI 1 positions (Pl. Memo, at 9-10).

At the beginning of their employment, plaintiff, Henry and Freeberg received one week of training at the WCB's Brooklyn office (Defs. 56.1 Stmt., ¶ 35; Pl. Memo, at 22).  According to defendants, plaintiff and the other new hires also received an additional five weeks of on-the-job training and were assigned a mentor to teach them how to perform assignments; Farnum was plaintiff's mentor (Farnum Aff., ¶ 12).  Plaintiff denies that he received this additional five weeks of training, and instead alleges that, unlike Freeberg and Henry, who were given mentors and were taken out for one day of in-the-field training, he received "no in-field training" and did not have a mentor (Pl. Memo, at 22-23; Pl. Third Aff., at 9).  Plaintiff also asserts that, during his first three and one-half months working for the WCB, he observed Farnum assisting Freeberg and Henry with their assignments, but that whenever plaintiff attempted to speak with Farnum, Farnum told plaintiff "that he did not have any time to

5

spare" (Letter from Bernard W. Goonewardena, dated December 31, 2015 (D.I. 159), Ex. 1, at 10).

According to Farnum, plaintiff was slow to develop the necessary skills to function as a CI 1, and plaintiff's work assignments regularly contained errors, which caused Farnum to review the assignments with plaintiff (Defs. 56.1 Stmt., ¶ 39). Plaintiff denies these allegations (Pl. Third Aff., at 10-12).

Farnum met with his supervisor, Leonard Frasco, in December 2007 to discuss plaintiff's performance issues (Defs. 56.1 Stmt., ¶ 40).  Farnum and Frasco agreed that plaintiff's performance issues warranted termination but decided to continue monitoring plaintiff's performance until the end of his first three months as a probationary employee to see if he improved (Defs. 56.1 Stmt., ¶ 40).

On December 28, 2007, plaintiff injured his knee when a pedestrian ran into him on the street (Defs. 56.1 Stmt., ¶ 41; Pl. Third Aff., at 14).  Plaintiff and defendants dispute both whether plaintiff's injury occurred while plaintiff was working and when plaintiff disclosed his injury to defendants, but it is undisputed that plaintiff completed a workers' compensation claim form for his injury, took a leave of absence commencing January 17, 2008 and soon thereafter was placed on workers' compensation leave (Defs. 56.1 Stmt., ¶¶ 42-45; Pl. Third Aff., at 14-15;

Plaintiff's Rebuttal to the Declaration of Lisa Sunkes, dated December 15, 2015 (D.I. 155-3) ("Pl. Fourth Aff."), at 4-5).

On or about February 27, 2008, while plaintiff was still on workers' compensation leave, Farnum completed a probationary report in which he rated plaintiff's performance as being unsatisfactory in three areas and recommended that plaintiff's employment be terminated (Defs. 56.1 Stmt., ¶ 48). After reviewing Farnum's recommendation, the then Director of Human Resources for the WCB, Lisa Sunkes, approved the termination of plaintiff's employment (Defs. 56.1 Stmt., ¶ 50).

By letter dated March 6, 2008, Sunkes informed plaintiff that, effective March 20, 2008, the WCB was terminating his probationary employment (Defs. 56.1 Stmt., ¶ 51). Following receipt of the notice of his termination, plaintiff wrote several letters to WCB employees requesting that his probationary employment be reinstated (Defs. 56.1 Stmt., ¶ 52). According to defendants, plaintiff also contacted the New York Governor's Office of Employee Relations, which prompted the WCB to review plaintiff's personnel history and the circumstances of his termination (Defs. 56.1 Stmt., ¶ 53). The WCB then decided to reinstate plaintiff's employment because plaintiff had been out on leave at the time the report on his probationary period was completed (Defs. 56.1 Stmt., ¶ 54).

Plaintiff, however, alleges that he was reinstated based on telephone conversations he had with WCB employees on March 19 and 20, 2008, in which he threatened to take the story of his termination to the media (Pl. Third Aff., at 19-20; Pl. Fourth Aff., at 17).  Plaintiff also alleges that, during these telephone calls, he was told that his position at the Harlem Office had been eliminated and that the position was being transferred to the WCB's Binghamton office (Pl. Third Aff., at 20).  In any event, it is undisputed that, by letter dated March 20, 2008, the WCB informed plaintiff that it had reversed its decision to terminate his employment and that, upon his return from workers' compensation leave, his probationary period of employment would continue (Defs. 56.1 Stmt., ¶ 55).

Plaintiff continued writing letters to the WCB while he remained on workers' compensation leave, including four letters written between April 12 and 15, 2008, in which he expressed concerns that he would be subjected to harassment and retaliation upon his return from medical leave and complained that Farnum's first probationary report was the product of discrimination against plaintiff on the basis of race, national origin, age and disability (Defs. 56.1 Stmt., ¶ 56-60; Declaration of Michael Siudzinski, dated September 9, 2014 (D.I. 123) ("Siudzinski Decl."), Ex. HH, at DEF 479).

8

Additionally, while plaintiff was on leave, the WCB hired John and Echefu, the two candidates Farnum allegedly preferred over plaintiff, as probationary investigators in the Harlem Office (Declaration of Paul Connelly, dated July 14, 2014 (D.I. 124), ¶¶ 37-38; see also Pl. Memo, at 9-10, 13-14).

Plaintiff returned from leave on or about April 17, 2008 (Defs. 56.1 Stmt., ¶ 61). According to plaintiff, on his first day back from leave, Farnum told plaintiff that plaintiff's "days [at the WCB] were going to be numbered" (Pl. Memo, at 14; Pl. Third Aff., at 20). Plaintiff also alleges that, at some point after his reinstatement, Farnum "called [plaintiff] to his desk," pointed to the "several letters [plaintiff sent] to the personnel official and said, [plaintiff] may complain but no one is going to believe [plaintiff]" (Pl. Memo, at 14-15).

Plaintiff further alleges that Farnum "created a hostile work environment with verbal attacks in the presence of other employees" (Pl. Third Aff., at 32). Specifically, plaintiff alleges that Farnum stated that plaintiff came from "the third world not equivalent to Western standards," that plaintiff was "garbage," that plaintiff was "black . . . not white" and that plaintiff should be "grateful that [he is] living in the United States better than in [Sri Lanka]" (Pl. Third Aff., at 21-22, 29, 31; Pl. Fourth Aff., at 9; Second Amended Complaint, dated March

9

25, 2010 (D.I. 8) ("Second Am. Compl."), ¶ 125; see also Plain-
tiff's Affidavit in Support of Opposition to Defendants' Motion
for Summary Judgment, dated December 14, 2015 (D.I. 155) ("Pl.
First Aff."), at 4).  On April 27, 2008, plaintiff sent a letter
to the WCB stating that he had been "insulted as coming from the
third world" (Siudzinski Decl., Ex. II, at DEF 468).

       In his deposition, plaintiff stated that Farnum made
discriminatory comments frequently after plaintiff returned from
his workers' compensation leave, and possibly more than twice a
week; however, plaintiff also stated that he could not recall the
frequency of the remarks and that "one remark is sufficient"
(Siudzinski Decl., Ex. MM ("Pl. Dep."), at 240:10-248:5).  Farnum
denies that he made any discriminatory comments to or about
plaintiff (Farnum Aff., ¶ 40).

       Plaintiff also alleges that Farnum instructed other
employees not to say hello to him (Pl. First Aff., at 28).  In
his deposition, however, plaintiff admitted that he never actu-
ally heard Farnum give such an instruction (Pl. Dep., at 214:19-
216:9).

       According to defendants, plaintiff's work performance
did not improve after he returned from leave, and Farnum received
complaints from plaintiff's coworkers that plaintiff was disrup-
tive on work assignments and refused to follow directions (Defs.

56.1 Stmt., ¶¶ 63-64).  Plaintiff denies that his performance was
substandard and that he was disruptive on work assignments (Pl.
Third Aff., at 21-25).

In June 2008, Farnum, Frasco and other individuals at
the WCB held a conference call, during which it was decided that
plaintiff's employment should be terminated because of his
continued performance issues (Defs. 56.1 Stmt., ¶ 66).  On or
about June 28, 2008, Farnum completed a second probationary
report in which he rated plaintiff's performance as unsatisfac-
tory in four areas (Defs. 56.1 Stmt., ¶ 67).  Sunkes approved
plaintiff's termination on or about July 1, 2008, and, by letter
dated July 2, 2008, the WCB informed plaintiff that his proba-
tionary employment was being terminated effective as of the close
of business on July 9, 2008 (Defs. 56.1 Stmt., ¶¶ 69-70).

Plaintiff alleges that on July 2, 2008, after he
arrived at work, Farnum informed plaintiff of his termination,
threw plaintiff's second probationary report in plaintiff's face
and shouted "get out" at him (Pl. Third Aff., at 25, 27).

On October 29, 2008, plaintiff commenced an Article 78
proceeding in the New York Supreme Court, New York County (Defs.
56.1 Stmt., ¶ 71).  In his amended Article 78 petition, plaintiff
alleged that his termination was based on a "personal vendetta"
by Farnum (Defs. 56.1 Stmt., ¶ 72).  While plaintiff's amended

Article 78 petition relied on many of the same facts raised in this action, it did not expressly raise any claims of discrimination on the basis of national origin or race or retaliation for engaging in a protected activity (Siudzinski Decl., Ex. A ("Art. 78 Petition")).

Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission (the "EEOC") on April 27, 2009, and, on June 30, 2009, the EEOC issued plaintiff a Notice of Right to Sue letter (Pl. Memo, Ex. 1, at 1-35).

By Order dated October 1, 2009, the New York Supreme Court dismissed plaintiff's Article 78 petition, holding that plaintiff "fail[ed] to allege, never mind prove, that his dismissal was accomplished in bad faith, i.e., for a constitutionally impermissible end, or in violation of statutory or decisional law" (Siudzinski Decl, Ex. B ("Art. 78 Order"), at 3). Plaintiff appealed the Supreme Court's Order to the Appellate Division of the Supreme Court for the State of New York, which affirmed the lower court's decision. Goonewardena v. State Workers' Compen. Bd., 95 A.D.3d 638, 943 N.Y.S.2d 884 (1st Dep't 2012). Plaintiff then moved for reargument or, in the alternative, leave to appeal to the New York State Court of Appeals

(Defs. 56.1 Stmt., ¶ 76).  The Appellate Division denied plain-

tiff's motion (Defs. 56.1 Stmt., ¶ 76).

III.  <u>Analysis</u>

    A.  Standards Applicable to a
        <u>Motion for Summary Judgment</u>

      The standards applicable to a motion for summary

judgment are well-settled and require only brief review.

> Summary judgment may be granted only where there
> is no genuine issue as to any material fact and the
> moving party . . . is entitled to a judgment as a
> matter of law.  Fed.R.Civ.P. 56(c).  In ruling on a
> motion for summary judgment, a court must resolve all
> ambiguities and draw all factual inferences in favor of
> the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>,
> 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202
> (1986).  To grant the motion, the court must determine
> that there is no genuine issue of material fact to be
> tried.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23,
> 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  A genuine
> factual issue derives from the "evidence [being] such
> that a reasonable jury could return a verdict for the
> nonmoving party."  <u>Anderson</u>, 477 U.S. at 248, 106 S.
> Ct. 2505.  The nonmoving party cannot defeat summary
> judgment by "simply show[ing] that there is some meta-
> physical doubt as to the material facts," <u>Matsushita
> Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
> 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986), or by a
> factual argument based on "conjecture or surmise,"
> <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991).
> The Supreme Court teaches that "all that is required
> [from a nonmoving party] is that sufficient evidence
> supporting the claimed factual dispute be shown to
> require a jury or judge to resolve the parties' differ-
> ing versions of the truth at trial."  <u>First Nat'l Bank
> of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89, 88
> S. Ct. 1575, 20 L.Ed.2d 569 (1968); <u>see also Hunt v.</u>

Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 143
L.Ed.2d 731 (1999).  It is a settled rule that
"[c]redibility assessments, choices between conflicting
versions of the events, and the weighing of evidence
are matters for the jury, not for the court on a motion
for summary judgment." Fischl v. Armitage, 128 F.3d
50, 55 (2d Cir. 1997).

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (ellipsis

added; brackets in original); accord Hill v. Curcione, 657 F.3d

116, 124 (2d Cir. 2011).

"Material facts are those which 'might affect the out-

come of the suit under the governing law,' and a dispute is

'genuine' if 'the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.'" Coppola v. Bear

Stearns & Co., Inc., 499 F.3d 144, 148 (2d Cir. 2007), quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"'[I]n ruling on a motion for summary judgment, a judge must ask

himself not whether he thinks the evidence unmistakably favors

one side or the other but whether a fair-minded jury could return

a verdict for the [non-movant] on the evidence presented[.]'"

Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir.

2007) (brackets in original), quoting Readco, Inc. v. Marine

Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).

Entry of summary judgment is appropriate "against a

party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on

14

which that party will bear the burden of proof at trial."
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "In such a
situation, there can be 'no genuine issue as to any material
fact,' since a complete failure of proof concerning an essential
element of the nonmoving party's case necessarily renders all
other facts immaterial."  Celotex Corp. v. Catrett, supra, 477
U.S. at 322-23, citing Fed.R.Civ.P. 56.

      As noted in McClellan v. Smith, supra, 439 F.3d at 144,
a court cannot make credibility determinations or weigh the
evidence in ruling on a motion for summary judgment.

> "Credibility determinations, the weighing of the evi-
> dence, and the drawing of legitimate inferences from
> the facts are jury functions, not those of a judge."
> [Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986)].
> Thus, although the court should review the record as a
> whole, it must disregard all evidence favorable to the
> moving party that the jury is not required to believe.
> See Wright & Miller 299.  That is, the court should
> give credence to the evidence favoring the nonmovant as
> well as that "evidence supporting the moving party that
> is uncontradicted and unimpeached, at least to the
> extent that that evidence comes from disinterested
> witnesses."  Id., at 300.

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51
(2000)[4]; accord In re Dana Corp., 574 F.3d 129, 152 (2d Cir.
2009).

Local Civil Rule 56.1(a) requires that a party moving
for summary judgment submit a "separate, short and concise
statement, in numbered paragraphs, of the material facts as to
which the moving party contends there is no genuine issue to be
tried."  In response, the non-moving party is required to submit
a counter-statement that "include[s] a correspondingly numbered
paragraph responding to each numbered paragraph in the statement
of the moving party, and if necessary, additional paragraphs
containing a separate, short and concise statement of additional
material facts as to which it is contended that there exists a
genuine issue to be tried."  Local Civil Rule 56.1(b).  A non-
moving party's "failure to comply with Local Rule 56.1 is [a
sufficient ground] for deeming admitted the facts contained in
[the movant's] Rule 56.1 statement" and granting the motion.
Taylor v. Local 32E Serv. Emps. Int'l, Union, 286 F. Supp. 2d
246, 248 n.1 (S.D.N.Y. 2003) (Conner, D.J.), aff'd, 118 F. App'x

_____

[4]Although the Court in Reeves was reviewing the denial of a
motion for judgment as a matter of law pursuant to Fed.R.Civ.P.
50, the same standards apply to a motion for summary judgment
pursuant to Fed.R.Civ.P. 56.  Reeves v. Sanderson Plumbing
Prods., Inc., supra, 530 U.S. at 150.

526 (2d Cir. 2004); <u>Watt v. N.Y. Botanical Garden</u>, 98 Civ. 1095

(BSJ), 2000 WL 193626 at *1 n.1 (S.D.N.Y. Feb. 16, 2000) (Jones,

D.J.).  Here, plaintiff has not submitted a counter-statement in

opposition to defendant's 56.1 statement.

"A district court[, however,] has broad discretion to

determine whether to overlook a party's failure to comply with

local court rules," and, thus, "may . . . opt to conduct an

assiduous review of the record even" when a party has not com-

plied with Rule 56.1.  <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62,

73 (2d Cir. 2001) (internal quotation marks omitted).  The Court

of Appeals for the Second Circuit has further explained that

> in determining whether the moving party has met [its]
> burden of showing the absence of a genuine issue for
> trial, the district court may not rely solely on the
> statement of undisputed facts contained in the moving
> party's Rule 56.1 statement.  It must be satisfied that
> the citation to evidence in the record supports the
> assertion[s].

<u>Vt. Teddy Bear Co. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 244 (2d

Cir. 2004); <u>see</u> <u>also</u> <u>Giannullo v. City of New York</u>, 322 F.3d 139,

140 (2d Cir. 2003); <u>Holtz v. Rockefeller & Co.</u>, <u>supra</u>, 258 F.3d

at 74 ("The local rule does not absolve the party seeking summary

judgment of the burden of showing that it is entitled to judgment

as a matter of law, and a Local Rule 56.1 statement is not itself

a vehicle for making factual assertions that are otherwise

unsupported in the record.").  Finally, "[i]t is well established

that a court is ordinarily obligated to afford a special solici-
tude to pro se litigants," which includes "liberal construction .
. . of motion papers" and "leniency in the enforcement of . . .
procedural rules."  Tracy v. Freshwater, 623 F.3d 90, 101 (2d
Cir. 2010).

   Accordingly, given plaintiff's pro se status, as well
as the strong preference in this Circuit for resolving cases on
the merits, see, e.g., Jamison v. Fischer, 11 Civ. 4697 (RJS),
2012 WL 4767173 at *6 (S.D.N.Y. Sept. 27, 2012) (Sullivan, D.J.),
I shall overlook plaintiff's failure to submit a Rule 56.1
statement and review the record independently.  See Am. Med.
Ass'n v. United HealthCare Corp., 00 Civ. 2800 (LMM), 2007 WL
1771498 at *3 (S.D.N.Y. June 18, 2007) (McKenna, D.J.) (conduct-
ing review of the record "to fill . . . gaps" resulting from the
nonmoving parties' failure to file a 56.1 counter-statement in
response to movants' 56.1 statement); Burke v. Royal Ins. Co., 39
F. Supp. 2d 251, 257 (E.D.N.Y. 1999) (analyzing a defendant's
motion for summary judgment against a pro se plaintiff "in light
of the entire record before the Court" where the plaintiff did
not submit a 56.1 statement and failed to "present factual
evidence in evidentiary form"); Citibank, N.A. v. Outdoor Resorts
of Am., Inc., 91 Civ. 1407 (MBM), 1992 WL 162926 at *4 (S.D.N.Y.
June 29, 1992) (Mukasey, D.J.) (declining to grant summary

judgment based on nonmoving party's failure to submit a Rule 56.1 statement).

B.   Application of the
     Foregoing to Defendants' Motion

Defendants argue that summary judgment is warranted because (1) plaintiff's claims are barred by the doctrine of collateral estoppel; (2)  plaintiff's claims are barred by the doctrine of res judicata; (3) plaintiff's Title VII hostile work environment claim and Title VII discrimination claims regarding discrete acts prior to July 1, 2008 are time-barred; (4) plaintiff cannot establish a prima facie case of discrimination or show that defendants' legitimate, non-discriminatory reason for terminating plaintiff's employment was pretextual and (5) plaintiff cannot establish a prima facie case of retaliation or show that defendants' legitimate, non-retaliatory reason for terminating plaintiff's employment was pretextual.

1.   Collateral Estoppel

28 U.S.C. § 1738 "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Kremer v. Chemical Const., Corp., 456

U.S. 461, 466 (1982); accord Rullan v. N.Y.C. Dep't of Sanita-
tion, 10 Civ. 8079 (RPP), 2011 WL 1833335 at *3 (S.D.N.Y. May 12,
2011) (Patterson, D.J.).  Under New York law, collateral estoppel
applies where "(1) the issue in question was actually and neces-
sarily decided in a prior proceeding, and (2) the party against
whom [collateral estoppel] is asserted had a full and fair
opportunity to litigate the issue in the first proceeding."
Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 94 (2d Cir.
2005) (citation omitted).

        Defendants argue the application of collateral estoppel
is warranted because plaintiff's discrimination and retaliation
claims were already decided in the Article 78 proceeding.
Defendants are incorrect.  While plaintiff's Article 78 petition
did assert that plaintiff was harassed by Farnum and that plain-
tiff informed the WCB that he feared he would be retaliated
against upon returning from workers' compensation leave, the
Article 78 petition did not allege that plaintiff was harassed or
discriminated against on the basis of race, national origin or
color, nor did it allege that plaintiff was terminated in retali-
ation for engaging in any protected activity.  Rather, plain-
tiff's Article 78 petition alleged that his termination was based
on "personal animosity and a vendetta" (Art. 78 Petition, ¶ 100).
Further, in dismissing plaintiff's Article 78 petition, the New

York Supreme Court held that plaintiff "fail[ed] to allege, never mind prove, that his dismissal was accomplished . . . for a constitutionally impermissible end, or in violation of statutory or decisional law" (Art. 78 Order, at 3 (emphasis added)).

In similar cases, courts within this Circuit have denied the application of collateral estoppel. E.g., Lawtone-Bowles v. City of New York, Dept. of Sanitation, 22 F. Supp. 3d 341, 349 & n.8 (S.D.N.Y. 2014) (Koeltl, D.J.) (denying the application of collateral estoppel to Title VII and ADEA claims because "issues of race-, color-, sex-, religion-, national origin-, and age-based discrimination were not raised" in a prior Article 78 proceeding but applying collateral estoppel to dismiss ADA claims that were actually decided in the prior proceeding); Latino Officers Ass'n v. City of New York, 253 F. Supp. 2d 771, 786-88 (S.D.N.Y. 2003) (Kaplan, D.J.) (denying the application of collateral estoppel to the employment discrimination and retaliation claims of two plaintiffs who did not raise those issues in their earlier Article 78 petitions but applying collateral estoppel to dismiss the same claims of another plaintiff who did actually raise those claims in his Article 78 proceeding); Harp v. City of New York, 218 F. Supp. 2d 495, 500 (S.D.N.Y. 2002) (Koeltl, D.J.) (denying the application of collateral estoppel to claims of racial discrimination where the

21

plaintiff's Article 78 petition did not raise any claims of racial discrimination); <u>Machiavelo v. N.Y.C. Transit Auth.</u>, 86 C 3321, 1987 WL 16404 at *5 (E.D.N.Y. Aug. 28, 1987) (denying the application of collateral estoppel because "[i]ssues such as discrimination on the basis of national ancestry and sex or denial of equal protection apparently were not raised at all" in a prior Article 78 proceeding).

Accordingly, because plaintiff did not raise, and the New York courts did not decide, plaintiff's present discrimination or retaliation claims, I conclude that collateral estoppel does not bar plaintiff's claims.[5]

2.  <u>Res Judicata</u>

Like collateral estoppel, where a federal court is considering the <u>res judicata</u> effect of a state court judgment, the federal court must afford the state court judgment the same preclusive effect it would have under the law of the state in

---

[5]Defendants also argue that collateral estoppel should apply because plaintiff could have raised his discrimination and retaliation claims in the Article 78 petition.  This argument too fails because "it is irrelevant for collateral estoppel purposes whether or not [claims] could have been raised" in an earlier proceeding.  <u>Lawtone-Bowles v. City of New York, Dept. of Sanitation</u>, <u>supra</u>, 22 F. Supp. 3d at 349 n.8, <u>citing Santana Prods., Inc. v. Sylvester & Assocs., Ltd.</u>, 279 F. App'x 42, 43-44 (2d Cir. 2008) (summary order).

which it was entered.  Marrese v. Am. Acad. of Orthopedic Sur-
geons, 470 U.S. 373, 380-82 (1985); Burka v. N.Y.C. Transit
Auth., 32 F.3d 654, 657 (2d Cir. 1994).  New York law applies the
"transactional" approach to res judicata, meaning that "once a
claim is brought to a final conclusion, all other claims arising
out of the same transaction or series of transactions are barred,
even if based upon different theories or if seeking a different
remedy."  Giannone v. York Tape & Label, Inc., 548 F.3d 191, 194
(2d Cir. 2008) (per curiam) (citation omitted).  Res judicata
"will not apply, however, where 'the initial forum did not have
the power to award the full measure of relief sought in the later
litigation.'"  Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.
1994), quoting Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir.
1986); accord Reed v. Friedman Mgt. Corp., 541 F. App'x 40, 41
(2d Cir. 2013) (summary order).

          "Under New York Civil Practice Law and Rules § 7806,
damages can be awarded in an Article 78 proceeding only if (1)
the damages are 'incidental to the primary relief sought' and (2)
'the relief must be such as [the petitioner could have recovered]
on the same set of facts in a separate action or proceeding
suable in the supreme court against the same body or officer in
its or his official capacity.'"  Wade v. City of Kingston, No.
1:13-CV-0623 LEK/RFT, 2014 WL 4897244 at *3 (N.D.N.Y. Sept. 30,

2014) (brackets in original).  "The [New York] Court of Appeals has held that incidental damages includes back pay in an Article 78 proceeding seeking reinstatement."  <u>Feldstein v. N.Y. State Office of Mental Health, Bronx Psychiatric Ctr.</u>, 846 F. Supp. 1089, 1098 (E.D.N.Y. 1994), <u>citing</u> <u>Pauk v. Bd. of Trustees of the City Univ. of N.Y.</u>, 68 N.Y.2d 702, 704-05, 497 N.E.2d 675, 675, 506 N.Y.S.2d 308, 308 (1986).  However, neither compensatory nor punitive damages are available in an Article 78 proceeding. <u>Latino Officers Ass'n v. City of New York</u>, <u>supra</u>, 253 F. Supp. 2d at 782, <u>citing</u> <u>Parker v. Blauvelt Volunteer Fire Co.</u>, 93 N.Y.2d 343, 348, 712 N.E.2d 647, 650, 690 N.Y.S.2d 478, 482 (1999).

Accordingly, <u>res</u> <u>judicata</u> "generally does not operate to bar a § 1983 suit following the resolution of an Article 78 proceeding, since the full measure of relief available in the former action is not available in the latter." <u>Colon v. Coughlin</u>, 58 F.3d 865, 870 n.3 (2d Cir. 1995); <u>accord</u> <u>Harp v. City of New York</u>, <u>supra</u>, 218 F. Supp. 2d at 499 ("Res judicata does not apply to the plaintiff's racial discrimination claim because in this action, he seeks compensatory damages that were not available in the Article 78 proceedings."); <u>see also</u> <u>Latino Officers Ass'n v. City of New York</u>, <u>supra</u>, 253 F. Supp. 2d at 782-83 (same conclusion for claims under Title VII, the NYSHRL and the NYCHRL).  Moreover, because "damage claims in an Article

78 proceeding may only be asserted against individuals in their official capacities," res judicata cannot bar claims against state employees in their individual capacities that arise out of the same set of facts as claims asserted in a prior Article 78 proceeding. Gargiul v. Tompkins, 790 F.2d 265, 272-73 (2d Cir. 1986); accord Barrington v. New York, 806 F. Supp. 2d 730, 739 (S.D.N.Y. 2011) (Holwell, D.J.) ("[C]ourts in this Circuit have held that a suit in a forum where state employees may only be sued in their official capacities does not bar an action against those employees in their individual capacities.").

Defendants nonetheless argue that res judicata should apply here for two reasons. First, relying on Hasenstab v. City of New York, 664 F. Supp. 95 (S.D.N.Y. 1987) (Kram, D.J.), defendants argue that, because plaintiff failed to raise his discrimination and retaliation claims in state court and did not prevail in his Article 78 proceeding, res judicata bars his claims.

Defendants' reliance on Hasenstab is misplaced. Since Hasenstab was decided, courts within this Circuit have made clear that the relevant inquiry for whether res judicata applies to claims arising out of the same set of facts as claims raised in a prior proceeding is whether "the initial forum [had] the power to award the full measure of relief sought in the later litigation."

25

Burgos v. Hopkins, supra, 14 F.3d at 790; see also Harp v. City
of New York, supra, 218 F. Supp. 2d at 500 (denying application
of res judicata to constitutional claims where plaintiff did not
prevail in prior proceeding); Sharp v. Abate, 887 F. Supp. 695,
700 (S.D.N.Y. 1995) (Kaplan, D.J.) (same); Natale v. Koehler, 89
Civ. 6566 (PNL), 1991 WL 130192 at *3 & n.3 (S.D.N.Y. July 9,
1991) (Leval, D.J.) (same).  As the court in Natale stated in
declining to follow Hasenstab, "[w]hether a plaintiff raised
certain claims or whether a plaintiff prevailed on certain claims
are not normally factors that determine whether the doctrine of
res judicata bars a subsequent suit."  Natale v. Koehler, supra,
1991 WL 130192 at *3 n.3; see also Davis v. Halpern, 813 F.2d 37,
39 n.2 (2d Cir. 1987) ("[A]ppellant was . . . denied relief [in
an Article 78 proceeding], but this difference has no effect on
the application of claim preclusion to this case.").

        Defendants' second argument for the application of res
judicata relies on the fact that plaintiff stated in his deposi-
tion that he is not seeking compensatory damages for any medical
bills (Pl. Dep., at 286:10-287:6).  While defendants acknowledge
that plaintiff seeks punitive damages, which were unavailable in
the Article 78 proceeding, they nonetheless reason that res
judicata should apply because "there is no basis for a trial
solely on punitive damages when [plaintiff] is not eligible for

any other form of relief" (Memorandum of Law in Support of
Defendants' Motion for Summary Judgment, dated September 9, 2014
(D.I. 127) ("Defs. Memo"), at 11).

Defendants do not cite any precedent that directly
supports this proposition.[6]  Moreover, the Court of Appeals for
the Second Circuit has held that punitive damages may be awarded
in Title VII cases "regardless [of] whether the plaintiff also
receives an award of compensatory or nominal damages,"
Cush-Crawford v. Adchem Corp., 271 F.3d 352, 359 (2d Cir. 2001),
and "ha[s] indicated that such an award may be made in section
1983 cases" as well.  King v. Macri, 993 F.2d 294, 297 (2d Cir.
1993); see also Barrington v. New York, supra, 806 F. Supp. 2d at
741 (rejecting the argument that res judicata applied where the
plaintiff sought punitive damages that were unavailable in an
earlier action because "nothing in the Second Circuit's decisions
in Burgos and its progeny suggests that the res judicata excep-
tion applies only where the plaintiff could not obtain compensa-

---

[6]The only case defendants cite that could be seen as
supporting this argument is Bal v. N.Y.C. Loft Bd., 00 Civ. 1112
(JGK), 2000 WL 890199 (S.D.N.Y. July 5, 2000) (Koeltl, D.J.).
However, Bal is inapposite because the plaintiff in Bal did not
seek punitive damages.  Rather, the plaintiff in Bal sought only
injunctive relief in his federal action, which "the Article 78
court could have granted."  Bal v. N.Y.C. Loft Bd., supra, 2000
WL 890199 at *4.  Accordingly, the court held his claim was
barred by res judicata.  Bal v. N.Y.C. Loft Bd., supra, 2000 WL
890199 at *4.

tory damages."); <u>Latino Officers Ass'n v. City of New York</u>, <u>supra</u>, 253 F. Supp. 2d at 782-83 (declining to apply <u>res judicata</u> to Section 1983, Title VII, NYSHRL and NYCHRL claims because "there is an incomplete overlap between the relief available to the plaintiffs in their Article 78 proceedings and in this case."); <u>Sharp v. Abate</u>, <u>supra</u>, 887 F. Supp. at 700 ("[Plaintiff] seeks damages, which were not, or may not have been, available in the Article 78 proceeding.  The doctrine of claim preclusion therefore does not apply here." (citation omitted)).

Accordingly, because the Article 78 proceeding did not have the power to award plaintiff the full measure of damages he seeks on his claims, and any damages against Farnum in his individual capacity whatsoever, <u>res judicata</u> does not bar plaintiff's claims.

### 3.   Title VII Statute of Limitations

The WCB next argues that plaintiff's Title VII claims against it for discrete acts of discrimination that occurred prior to July 1, 2008 are time-barred.[7]

In New York State, Title VII claims must be filed with the EEOC within 300 days of an allegedly discriminatory or

---

[7]The WCB concedes that plaintiff's Title VII claims with respect to his termination are not time-barred.

retaliatory act.  42 U.S.C. § 2000e-5(e)(1); Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 327 (2d Cir. 1999).  Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period, irrespective of whether other acts of discrimination occurred within the statutory time period." Mark v. Brookdale Univ. Hosp., No. 04-CV-2497 (JBW), 2005 WL 1521185 at *16 (E.D.N.Y. June 22, 2005) (emphasis in original), citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

Plaintiff filed his charge of discrimination and retaliation with the EEOC on April 27, 2009 (Pl. Memo, Ex. 1, 1-35).  Therefore, any of plaintiff's claims for discrete acts that occurred before July 1, 2008 -- the 300th day prior to April 27, 2009 -- are time-barred.  Accordingly, plaintiff's Title VII claims related to his allegations that (1) Freeberg and Henry were provided with one day of in-the-field training in 2007 but he was not and (2) Farnum assisted Freeberg and Henry with their assignments during his first three and a half months working for the WCB, but never assisted him, are time-barred.

The WCB further argues that plaintiff's hostile work environment claim is also time-barred.  However, "[h]ostile environment claims are different in kind from discrete acts" because "[s]uch claims are based on the cumulative effect of

individual acts." Nat'l R.R. Passenger Corp. v. Morgan, supra,
536 U.S. at 115.  Therefore,

> in the case of a hostile work environment claim, the
> statute of limitations requires that only one . . .
> harassing act demonstrating the challenged work envi-
> ronment occur within 300 days of filing; once that is
> shown, a court and jury may consider "the entire time
> period of the hostile environment" in determining
> liability.  Nat'l R.R. Passenger Corp. v. Morgan, 536
> U.S. 101, 117, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002).

Petrosino v. Bell Atl., 385 F.3d 210, 220 (2d Cir. 2004).

"A hostile work environment claim is actionable if the
alleged conduct amounts to discriminatory intimidation, ridicule,
and insult that is sufficiently severe or pervasive to alter the
conditions of the victim's employment and create an abusive
working environment." Meckenberg v. N.Y.C. Off-Track Betting, 42
F. Supp. 2d 359, 372 (S.D.N.Y. 1999) (Carter, D.J.) (internal
quotation marks and citation omitted). Here, plaintiff alleges
one timely act that could contribute to a hostile work environ-
ment -- that, on July 2, 2008, Farnum threw plaintiff's second
probationary report in plaintiff's face and shouted "get out" at
him (Pl. Third Aff., at 25, 27). By itself, this action does not
constitute a hostile work environment. Hansen v. Dean Witter
Reynolds Inc., 887 F. Supp. 669, 675 (S.D.N.Y. 1995) (Baer, D.J.)
(finding no hostile work environment where supervisor "rose

himself up in an intimidating male stature and proceeded to
scream, 'You're fired'").

Nor has plaintiff offered sufficient evidence of severe
and abusive class-based abuse prior to July 1, 2008 that would
allow a reasonable jury to conclude that Farnum's alleged actions
on July 2, 2008 contributed to any ongoing hostile work environ-
ment.  See Meckenberg v. N.Y.C. Off-Track Betting, supra, 42 F.
Supp. 2d at 372-74 (dismissing a Title VII hostile work environ-
ment claim as time-barred where the plaintiff "ha[d] not suffi-
ciently pleaded a hostile environment claim based on defendants'
actions before [the date set by the statute of limitations]").

In total, plaintiff's evidence of a hostile work
environment consists of plaintiff's allegation that his coworkers
would not say hello to him and his allegation that Farnum engaged
in "verbal attacks," including Farnum's saying that plaintiff was
"garbage" and came from the "third world."  Viewed in their
totality, these acts are not sufficiently severe and pervasive to
constitute a hostile work environment.  Fleming v. MaxMara USA,
Inc., 371 F. App'x 115, 119 (2d Cir. 2010) (summary order)
(concluding that no hostile work environment existed where
"defendants wrongly excluded [the plaintiff] from meetings,
excessively criticized her work, refused to answer work-related
questions, arbitrarily imposed duties outside of her responsibil-

ities, threw books, and sent rude emails to her"); <u>Schwapp v.</u>
<u>Town of Avon</u>, 118 F.3d 106, 110 (2d Cir. 1997) ("For racist
comments, slurs, and jokes to constitute a hostile work environ-
ment, there must be more than a few isolated incidents of racial
enmity, meaning that [i]nstead of sporadic racial slurs, there
must be a steady barrage of opprobrious racial comments." (cita-
tions and internal quotation marks omitted; brackets in origi-
nal)); <u>Davis-Molinia v. Port Auth. of N.Y. & N.J.</u>, 08 Civ. 7586
(GBD), 2011 WL 4000997 at *11 (S.D.N.Y. Aug. 19, 2011) (Daniels,
D.J.) (finding that "diminished [job] responsibilities," "exclu-
[sion] from staff meetings," deliberate "avoid[ance]," "yell[ing]
and talk[ing] down to," and "belittl[ing]," among other factors,
were not enough to constitute a hostile work environment), <u>aff'd</u>,
488 F. App'x 530 (2d Cir. 2012).[8]

------------------------------------------------------------

[8]While plaintiff testified at certain points in his
deposition that Farnum "repeatedly" made comments regarding
plaintiff's national origin and race, he also stated at other
points that he could not recall the frequency with which these
alleged remarks were made and that "one remark is sufficient"
(Pl. Dep., at 240:10-248:5).  Plaintiff also fails to quantify
the frequency of these remarks in his opposition papers.  Indeed,
plaintiff does not provide the exact content or context of any of
these alleged remarks in his deposition or in his opposition
papers other than to rely on the same allegations that are set
forth in his second amended complaint regarding Farnum's calling
plaintiff "garbage" and "black . . . not white" and saying that
plaintiff is from the "third world."  Therefore, plaintiff has
not presented evidence that Farnum engaged in the "steady barrage
of opprobrious racial comments" necessary for discriminatory
(continued...)

Plaintiff's allegations regarding his coworkers' failing to say hello to him also is not severe or pervasive, nor has plaintiff produced any evidence showing that the WCB or Farnum had any involvement in his coworkers' treatment of him or that his coworkers' actions were motivated by any discriminatory animus. Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999) ("A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a pro-tected class."); Bacchus v. N.Y.C. Dep't of Educ., No. 12 CV 1663 PKC, 2015 WL 5774550 at *18 (E.D.N.Y. Sept. 30, 2015) ("A plain-tiff must link the hostile conduct to her protected characteris-tics.").

Therefore, because plaintiff has not shown that any alleged acts in July 2008 contributed to an ongoing hostile work environment, plaintiff's Title VII hostile work environment claim is time-barred. Accordingly, I recommend that the WCB be granted summary judgment with respect to plaintiff's Title VII discrimi-nation claims involving discrete acts that occurred prior to July 1, 2008 and Title VII hostile work environment claim.[9]

---

[8](...continued)
remarks to create a Title VII hostile work environment. Schwapp v. Town of Avon, supra, 118 F.3d at 110.

[9]Because the standards for establishing a hostile work environment under the NYSHRL and Section 1983 mirror Title VII's
(continued...)

4.   <u>Plaintiff's Discrimination Claims</u>

Claims of discrimination and hostile work environment under Title VII and the NYSHRL are properly analyzed under the now familiar framework first set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  <u>Simmons v. Akin Gump Strauss Hauer & Feld, LLP</u>, 508 F. App'x 10, 12 (2d Cir. 2013) (summary order).

Under the <u>McDonnell Douglas</u> framework, discrimination claims are assessed through a three-part, burden-shifting analysis:

> [T]he initial burden rests with the plaintiff to establish a prima facie case of discrimination.  "A plaintiff's establishment of a prima facie case gives rise to a presumption of unlawful discrimination" that then "shifts the burden of production to the defendant, who must proffer a 'legitimate, nondiscriminatory reason' for the challenged employment action." <u>Woodman v. WWOR-TV, Inc.</u>, 411 F.3d [69, 76 (2d Cir. 2005)] (quoting <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F.3d 87, 91 (2d Cir. 2001)).  If the defendant satisfies this burden, "the presumption of discrimination drops out" of the case, and the plaintiff must prove that a defendant's proffered reasons were not the true reasons for its actions but a pretext for discrimina-

---

[9](...continued)
standards, <u>see</u> <u>Bowen-Hooks v. City of New York</u>, 13 F. Supp. 3d 179, 209 (E.D.N.Y. 2014), I also recommend that Farnum be granted summary judgment with respect to plaintiff's NYSHRL and Section 1983 hostile work environment claims.

tion. <u>Roge v. NYP Holdings, Inc.</u>, 257 F.3d 164, 168
(2d Cir. 2001).

<u>Cross v. N.Y.C. Transit Auth.</u>, 417 F.3d 241, 248 (2d Cir.
2005).[10]

In order to establish a <u>prima facie</u> case of discrimina-
tion, a plaintiff must offer evidence sufficient to give rise to
an issue of fact as to four elements: (1) he is a member of a
protected class; (2) he was qualified for the position; (3) he
was subject to an adverse employment action and (4) the adverse
employment action occurred under circumstances giving rise to an
inference of discrimination on the basis of his membership in the
protected class. <u>Dawson v. Bumble & Bumble</u>, 398 F.3d 211, 216
(2d Cir. 2005) (citations omitted); <u>accord Feingold v. New York</u>,
366 F.3d 138, 149 (2d Cir. 2004); <u>Collins v. N.Y.C. Transit
Auth.</u>, 305 F.3d 113, 118 (2d Cir. 2002).

Until relatively recently, NYCHRL claims were construed
under the same standards as NYSHRL and Title VII claims. <u>Velazco
v. Columbus Citizens Found.</u>, 778 F.3d 409, 410 (2d Cir. 2015)

---

[10]A discrimination claim by a public employee under Section
1983 is also assessed under the <u>McDonnell Douglas</u> framework
provided that the plaintiff can establish he was discriminated
against by a supervisor "acting color of state law." <u>Vega v.
Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 87 (2d Cir. 2015).
Because defendants do not dispute that Farnum's actions were
taken under color of state law, my analysis of plaintiff's Title
VII and NYSHRL claims is equally applicable to his Section 1983
discrimination claim.

(per curiam) ("[F]or many years, the NYCHRL was construed to be coextensive with its state and federal counterparts." (citation and quotation marks omitted)).  But in 2005, the New York City Council amended the NYCHRL to make clear that "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citations and internal quotation marks omitted).  "Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., supra, 715 F.3d at 109.

        Here, defendants argue that summary judgment should be granted as to all of plaintiff's discrimination claims because plaintiff cannot establish a prima facie case of discrimination or demonstrate that defendants' legitimate, non-discriminatory reason for terminating his employment was pretextual.  Because the NYCHRL standards differs from the standard under Title VII, the NYSHRL and Section 1983, I shall address plaintiff's NYCHRL

claim against Farnum separately from his Title VII, NYSHRL and Section 1983 claims.

### a.  Plaintiff's Discrimination Claims under Title VII, the NYSHRL and Section 1983

Defendants argue that they should be granted summary judgment for plaintiff's discrimination claims under Title VII, the NYSHRL and Section 1983 because (1) plaintiff cannot estab-lish that he suffered an adverse employment action prior to his July 2008 termination[11]; (2) plaintiff cannot establish that any adverse employment action, including his termination, occurred under circumstances giving rise to an inference of discrimination and (3) plaintiff cannot show that the WCB's legitimate, non-discriminatory reason for plaintiff's termination was pretextual.

### i.  Adverse Employment Actions Prior to Plaintiff's Termination

Defendants first argue that plaintiff's allegations regarding his denial of in-the-field training and Farnum's lack of supervision do not constitute adverse employment actions under Title VII,[12] the NYSHRL and Section 1983.

---

[11]Defendants do not (and could not) dispute that plaintiff's termination constitutes an adverse employment action.

[12]Although I have already concluded that plaintiff's Title
(continued...)

Under Title VII, the NYSHRL and Section 1983, an adverse employment action occurs when a plaintiff "endures a materially adverse change in the terms and conditions of employment." Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at 85, quoting Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  An adverse employment action is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. N.Y.C. Bd. of Educ., supra, 202 F.3d at 640 (citation omitted).

> While there is no exhaustive list of what constitutes an adverse employment action, courts have held that the following actions, among others, may qualify: discharge or demotion; denial of a provisional or permanent promotion; addition of responsibilities; involuntary transfer that entails objectively inferior working conditions, denial of benefits; denial of a requested employment accommodation; denial of training that may lead to promotional opportunities; and a shift assignment that makes a normal life difficult for the employee.

Little v. Nat'l Broad. Co., 210 F. Supp. 2d 330, 377 (S.D.N.Y. 2002) (Scheindlin, D.J.) (citations omitted).

Here, plaintiff alleges that, unlike Freeberg and Henry, he received "no in-field training" (Pl. Memo, at 22-23;

[12] (...continued)
VII claims regarding these acts are time-barred, because the analysis under the NYSHRL and Section 1983 is the same as the Title VII analysis for the purposes of this motion, I also address whether these acts are materially adverse under Title VII.

Pl. Third Aff., at 9).  He also alleges that Farnum assisted
Freeberg and Henry with their assignments but that he did not
assist plaintiff.  However, plaintiff does not provide any
evidence of how this purported lack of training or assistance
materially affected the terms and conditions of his employment.
Absent such evidence, these alleged acts do not constitute
adverse employment actions under Title VII, the NYSHRL and
Section 1983.  Kellman v. Metro. Transp. Auth., 8 F. Supp. 3d
351, 374 (S.D.N.Y. 2014) (Batts, D.J.) (the denial of workplace
training that did not affect the terms and conditions of employ-
ment was not an adverse action under Title VII or the NYSHRL);
see also Rowe v. Jagdamba, Inc., 302 F. App'x 59, 62 (2d Cir.
2008) (summary order) (holding that "isolated incidents of
adverse treatment in scheduling" that resulted in some "loss of
tips and wages" are not materially adverse actions under Title
VII); Castro v. N.Y.C. Bd. of Educ. Pers., 96 Civ. 6314 (MBM),
1998 WL 108004 at *7 (S.D.N.Y. Mar. 12, 1998) (Mukasey, D.J.)
("[A]lthough reprimands and close monitoring may cause an em-
ployee embarrassment or anxiety, such intangible consequences are
not materially adverse alterations of employment conditions.").

        Accordingly, I conclude that defendants' motion for
summary judgment concerning plaintiff's Title VII, NYSHRL and

Section 1983 discrimination claims arising out of discrete acts
that occurred prior to his termination should be granted.

###### ii.   Inference of Discrimination
for Plaintiff's Termination

Defendants next argue that they are entitled to summary
judgment with respect to plaintiff's Title VII, NYSHRL and
Section 1983 claims arising out of his termination because
plaintiff cannot show that his termination occurred under circum-
stances giving rise to an inference of discrimination.  Plaintiff
argues that discriminatory intent can be inferred from the
statements Farnum allegedly made to plaintiff following his
reinstatement that plaintiff came from "the third world not
equivalent to Western standards," that he was "garbage," that he
was "black . . . not white" and that he should be "grateful that
[he is] living in the United States better than in [Sri Lanka]"
(Pl. Third Aff., at 22, 29, 31; Pl. Fourth Aff., at 9; Second Am.
Compl., ¶ 125).[13]

---

[13]Plaintiff also appears to argue that an inference of
discrimination can be drawn because he believes that he was fired
so that John and Echefu, who were hired while he was on workers'
compensation leave, could replace him (Pl. Memo, at 9-10, 13-14).
Plaintiff's theory is apparently based on his allegation that
Farnum stated he preferred John and Echefu over plaintiff and his
belief that the WCB had no choice but to hire him, despite
Farnum's preference, due to the constraints of New York Civil
(continued...)

The Court of Appeals for the Second Circuit has held that when determining whether remarks, such as those ascribed to Farnum, are probative of discriminatory intent, district courts may consider:

> (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discrimina-

---

[13](...continued)
Service Law § 61(1), which reads in pertinent part, "Appointment or promotion from an eligible list to a position in the competitive class shall be made by the selection of one of the three persons certified by the appropriate civil service commission as standing highest on such eligible list who are willing to accept such appointment or promotion" (Second Am. Compl., ¶ 29; Pl. Third Aff., at 3).

Defendants dispute that the requirements of New York Civil Service Law § 61(1) required the WCB to hire plaintiff because, according to Paul Connelly, the WCB's Director of Personnel within the office of Human Resources, the CI 1 list that contained plaintiff's name consisted of only two eligible candidates (Defs. 56.1 Stmt., ¶ 31).  Plaintiff offers no evidence that either contradicts Connelly's contention or supports his general belief that the two employees hired while he was on leave were meant to fill his position.  Moreover, John, Echefu and plaintiff worked together in the WCB's Harlem Office for two and a half months following plaintiff's reinstatement. Therefore, plaintiff's unsupported belief that these two employees were hired to replace him does not create an inference of discrimination.  Hicks v. Baines, 593 F.3d 159, 167 (2d Cir. 2010) ("[A] party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove."); Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) ("[C]onclusory allegations . . . are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." (citations and internal quotation marks omitted)).

tory); and (4) the context in which the remark was made
(i.e., whether it was related to the decision-making
process).

Henry v. Wyeth Pharmaceuticals, 616 F.3d 134, 149 (2d Cir. 2010).
However, "none of these factors should be regarded as
dispositive."  Henry v. Wyeth Pharmaceuticals, supra, 616 F.3d at
150.

     Here, the first factor supports an inference of dis-
crimination because Farnum was plaintiff's supervisor and ulti-
mately recommended his termination.  Second, while the exact
timing of the remarks is unclear, the evidence indicates that
these remarks were made within, at most, two and a half months of
plaintiff's eventual termination.  Finally, a reasonable jury
could very well find that the content and context of these
remarks, and particularly the remark that plaintiff was from "the
third world not equivalent to Western standards," were both dis-
criminatory in nature and indicated that Farnum believed that
plaintiff's national origin affected his ability to do his job.

     Accordingly, given the minimal burden required to
establish a prima facie case, these remarks satisfy the
inference-of-discrimination prong of McDonnell Douglas.  Brown v.
Crowdtwist, 12 Civ. 6110 (HB), 2014 WL 1468145 at *3 (S.D.N.Y.
Apr. 15, 2014) (Baer, D.J.) (several remarks regarding plain-
tiff's age created an inference of discrimination for an ADA

claim); Smith v. Tuckahoe Union Free Sch. Dist., 03 Civ. 7951
(PGG), 2009 WL 3170302 at *7-*8 & n.8 (S.D.N.Y. Sept. 30, 2009)
(Gardephe, D.J.) (holding that plaintiff established an inference
of discriminatory intent where a supervisor was alleged to have
"used [a] racial epithet the day before he informed [plaintiff]
that he would be recommending [his] termination"); Little v.
Nat'l Broad. Co., supra, 210 F. Supp. 2d at 379 (racially offen-
sive conduct that "occurred well before the statute of limita-
tions" supported an inference of discrimination); see also
Phillips v. Dow Jones & Co., 04 Civ. 5178 (DAB), 2009 WL 2568437
at *15 (S.D.N.Y. Aug. 17, 2009) (Batts, D.J.) ("[C]omments made
directly to a plaintiff on more than one occasion by her immedi-
ate supervisor, who had enormous influence in the decisionmaking
process are more probative [of discriminatory intent]." (cita-
tions and internal quotation marks omitted)).

        While defendants do not directly address all of the
comments allegedly made by Farnum, they argue that plaintiff
cannot establish an inference of discrimination because Farnum is
the same person who initially recommended that the WCB hire
plaintiff, relying on what is referred to as the "same-actor
inference."  This inference is based on the proposition that,
"when the person who made the decision to fire was the same
person who made the decision to hire, it is difficult to impute

to [that person] an invidious motivation that would be inconsistent with the decision to hire." Grady v. Affiliated Central, Inc., 130 F.3d 553, 560 (2d Cir. 1997).

"The same-actor inference is not dispositive, however, when the decisionmaker makes comments demonstrating discriminatory animus." Smith v. Tuckahoe Union Free Sch. Dist., supra, 2009 WL 3170302 at *8; see also Phillips v. Dow Jones & Co., supra, 2009 WL 2568437 at *15 (denying employer's summary judgment motion even though the same supervisor hired and fired plaintiff in part because the supervisor made numerous racial remarks); Braunstein v. Barber, 06 Civ. 5978 (CS), 2009 WL 1542707 at *1 (S.D.N.Y. Jun. 2, 2009) (Sibel, D.J.) ("The same-actor inference is not dispositive, particularly where, as here, there is evidence that such actor made comments that could be construed as overtly discriminatory."); Bookman v. Merrill Lynch, 02 Civ. 1108 (RJS), 2009 WL 1360673 at *14 (S.D.N.Y. May 14, 2009) (Sullivan, D.J.) ("[I]n light of the evidence in the record of discriminatory comments by [plaintiff's supervisors], the application of the 'same actor' inference at this stage would improperly usurp the role of the fact finder.").[14]

---

[14]There is at least one District Court decision within this Circuit that has held that the same-actor inference precludes a finding of discriminatory animus even where the supervisor has

(continued...)

This is especially true where, as here, there is
evidence that the plaintiff has made complaints regarding the
existence of a discriminatory work environment.  As the Court of
Appeals for the Second Circuit noted in denying the application
of the same-actor inference in Feingold, plaintiff's "complaints
of discrimination could be found to have altered the circum-
stances of his employment:  Viewing the evidence in the light
most favorable to the plaintiff, after complaining about discrim-
ination [plaintiff] became not merely a [member of a protected
class] but a [member of a protected class] who . . . would not
tolerate a discriminatory office culture."  Feingold v. New York,
supra, 366 F.3d at 155; see also Smith v. Tuckahoe Union Free
Sch. Dist., supra, 2009 WL 3170302 at *8 ("[G]iven the evidence

---

[14](...continued)
made remarks similar to those alleged here.  Velez v. SES
Operating Corp., 07 Civ. 10946 (DLC), 2009 WL 3817461 (S.D.N.Y.
Nov. 12, 2009) (Cote, D.J.).  In Velez, the court applied the
same-actor inference even though the plaintiff's supervisor had
called her a "dumb Puerto Rican."  Velez v. SES Operating Corp.,
supra, 2009 WL 3817461 at *10.  Velez is distinguishable from the
present case, however, because the first time the plaintiff in
Velez mentioned these remarks was at her deposition, which
occurred over two years after her termination.  Velez v. SES
Operating Corp., supra, 2009 WL 3817461 at *10 n.7.  Here, in
contrast, plaintiff included his allegations of Farnum's remarks
in both his complaint in this action and his EEOC complaint.
Further, plaintiff wrote a letter to the WCB while he was still
employed, dated April 27, 2008, in which he stated that he had
been "insulted as coming from the third world" (Siudzinski Decl.,
Ex. II, at DEF 468).

Plaintiff has offered of [his supervisor's] discriminatory
animus, the same-actor inference does not warrant granting
Defendants judgment as a matter of law.").

Accordingly, I conclude that the same actor inference
does not apply and that plaintiff has established a prima facie
case of discrimination.

### iii.  Pretext

Defendants next argue that they can rebut any inference
of discrimination arising from plaintiff's termination because
the WCB had a legitimate, non-discriminatory reason for plain-
tiff's termination -- plaintiff's poor job performance -- and
that plaintiff cannot show that this non-discriminatory reason
was mere pretext.

Defendants are correct that the evidence here of
Farnum's negative evaluations of plaintiff's job performance
demonstrates a legitimate, non-discriminatory reason for plain-
tiff's termination.  Wheeler v. Corp. Counsel of N.Y.C., 93 Civ.
5184 (NRB), 2000 WL 1760947 at *7 (S.D.N.Y. Nov. 30, 2000)
(Buchwald, D.J.) ("[D]efendants have articulated a legitimate,
non-discriminatory reason for plaintiff's termination:  namely,
plaintiff was a sub-par employee."), aff'd, 28 F. App'x 90 (2d
Cir. 2002); accord Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir.

46

1985) ("In determining whether an employee's job performance is satisfactory, courts may -- as they often must -- rely on the evaluations rendered by supervisors.").

However, viewed in the light most favorable to plaintiff, there is sufficient evidence for a reasonable jury to conclude that this legitimate, non-discriminatory reason was pretextual. First, plaintiff disputes that he in fact performed poorly following his reinstatement (Pl. Third Aff., at 21-25). Second, the only evidence in the record of plaintiff's poor work performance consists of an affidavit made by Farnum and probationary reports completed by Farnum. Accordingly, because Farnum "played a 'meaningful role' in [the WCB's] decision to terminate" plaintiff, and plaintiff has offered evidence of discriminatory comments by Farnum, a reasonable jury could find that defendants' stated reason of terminating plaintiff for poor performance was pretextual. Smith v. Tuckahoe Union Free Sch. Dist., supra, 2009 WL 3170302 at *8 n.8; accord Mugavero v. Arms Acres, Inc., 03 Civ. 5724 (PGG), 2009 WL 890063 at *19 (S.D.N.Y. Mar. 31, 2009) (Gardephe, D.J.) ("[A] plaintiff may . . . defeat summary judgment by showing that an individual who was motivated by unlawful intent played a 'meaningful role' in the decision."), citing Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999) ("We recognize that the impermissible bias of a single individual

at any stage of the [decision making] process may taint the ultimate employment decision in violation of Title VII."). Therefore, while a reasonable jury could very well disregard plaintiff's account of the facts of this case and credit Farnum's statement that he never made any discriminatory comments to plaintiff, I cannot conclude that there is no genuine issue of fact that plaintiff's termination could not have been motivated by discriminatory animus. Accordingly, I respectfully recommend that defendants' motion for summary judgment as to plaintiff's discrimination claims arising out of his termination be denied.

b. Plaintiff's NYCHRL
   Discrimination and Hostile Work
   Environment Claims against Farnum[15]

Unlike Title VII and the NYSHRL, under the NYCHRL, "liability is normally determined simply by the existence of differential treatment." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., supra, 715 F.3d at 110, citing Williams v. N.Y.C.

---

[15]Under the NYCHRL, "[t]he standards for discrimination and hostile work environment are the same." Roberts v. United Parcel Serv., Inc., --- F. Supp. 3d ---, No. 13-CV-6161, 2015 WL 4509994 at *20 (E.D.N.Y. July 27, 2015); citing Johnson v. Strive E. Harlem Emp't Grp., 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014) (Baer, D.J.) ("[U]nder the NYCHRL, there are not separate standards for 'discrimination' and 'harassment' claims." (citation omitted)). Accordingly, I address plaintiff's NYCHRL hostile work environment claim together with his NYCHRL discrimination claim.

Hous. Auth., 61 A.D.3d 62, 75, 872 N.Y.S.2d 27, 38 (1st Dep't

2009).  Accordingly, the NYCHRL "does not require . . . materi-

ally adverse employment actions.  Instead, a focus on unequal

treatment based on [membership in a protected class] -- regard-

less of whether the conduct is tangible (like hiring or firing)

or not -- is in fact the approach that is most faithful to the

[NYCHRL's] uniquely broad and remedial purposes."  Mihalik v.

Credit Agricole Cheuvreux N. Am., Inc., supra, 715 F.3d at 114

(citations and quotation marks omitted).

> Thus . . . in order to make out the third prong of a
> prima facie case of discrimination under the NYCHRL, a
> plaintiff must simply show that []he was treated dif-
> ferently from others in a way that was more than triv-
> ial, insubstantial, or petty.  The fourth prong of the
> prima facie case is satisfied if a member of a pro-
> tected class was treated differently than a worker who
> was not a member of that protected class.

Williams v. Regus Mgmt. Grp., LLC, 836 F. Supp. 2d 159, 173

(S.D.N.Y. 2011) (Scheindlin, D.J.).

Accordingly, conduct that is not actionable under Title

VII or the NYSHRL may, nevertheless, be actionable under the

NYCHRL.  See Forgione v. City of New York, No. 11 Civ. 5248, 2012

WL 4049832 at *5-6 (E.D.N.Y. Sept. 13, 2012) (holding that

defendants' referral of plaintiff for psychological evaluation,

while not materially adverse under NYSHRL, was actionable under

NYCHRL); Sotomayor v. City of New York, 862 F. Supp. 2d 226, 255,

257-58 (E.D.N.Y. 2012) (negative observations and evaluations of plaintiff that did not trigger negative consequences for plaintiff's employment were adverse actions under the NYCHRL even though they were not adverse under Title VII or the NYSHRL).

"When applying this standard, however, district courts must be mindful that the NYCHRL is not a 'general civility code.'" <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, <u>supra</u>, 715 F.3d at 110, <u>quoting</u> <u>Williams v. N.Y.C. Hous. Auth.</u>, <u>supra</u>, 61 A.D.3d at 79, 872 N.Y.S.2d at 40-41.  Thus,

> [e]ven if the plaintiff establishes that []he was treated less well because of [membership in a protected class], defendants may assert an affirmative defense whereby [they] can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences.  As with most affirmative defenses, the employer has the burden of proving the conduct's triviality under the NYCHRL.

<u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, <u>supra</u>, 715 F.3d at 111 (citations and internal quotation marks omitted).

Farnum does not independently address plaintiff's NYCHRL claims, arguing instead that the standards under the NYCHRL "do[] not differ materially [from the NYSHRL or Title VII standards] on the issues relevant to this motion" (Defs. Memo, at 18 n.6).  As the foregoing authorities demonstrate, Farnum is incorrect.  Further, the cases cited by defendants in support of

their argument that plaintiff did not suffer any adverse employ-
ment actions prior to his July 2008 termination either do not
involve NYCHRL claims, fail to address the NYCHRL's broad stan-
dards or pre-date the New York City Council's 2005 amendments to
the NYCHRL.

        As an initial matter, because I conclude that plain-
tiffs' claims arising out of his termination survive summary
judgment under Title VII and the NYSHRL, "it [can be] assumed
that those claims also satisfy the NYCHRL standard." Adams v.
City of New York, 837 F. Supp. 2d 108, 127 (E.D.N.Y. 2011).

        Further, with respect to plaintiff's claims arising out
of his job training, the denial of training to a person in a
protected class where the same training was offered to members
outside of the protected class can constitute an adverse action
under the NYCHRL even if it is not materially adverse under Title
VII or the NYSHRL. Kellman v. Metro. Transp. Auth., supra, 8 F.
Supp. 3d at 379 (the denial of workplace training was an adverse
action under the NYCHRL even though it did not affect plaintiff's
wages or chances for promotion and was not adverse under Title
VII or the NYSHRL).

        Similarly, plaintiff's allegations regarding Farnum's
"verbal attacks," and specifically his allegations that Farnum
referred to plaintiff as being "black . . . not white" and from

51

"the third world" and his allegation that Farnum yelled at him on
July 2, 2008 and threw plaintiff's second probationary report in
plaintiff's face "might well be sufficient to make out a prima
facie case under the [NYCHRL]." Williams v. Regus Mgmt. Grp.,
LLC, supra, 836 F. Supp. 2d at 175-76 (denying a motion for
summary judgment seeking dismissal of a NYCHRL discrimination
claim where the employer allegedly ignored the plaintiff's
opinion but not the opinions of Caucasian employees and communi-
cated with plaintiff differently than Caucasian employees).
Therefore, I conclude that these alleged "verbal attacks," when
combined with plaintiff's denial of training, satisfy the third
prong of a prima facie case under the NYCHRL.[16]

     Further, "[u]nder the NYCHRL, 'the inference of dis-
crimination prong of the prima facie case is satisfied if a
member of a protected class was treated differently than a worker
who was not a member of that protected class.'" Kellman v.

_____

[16]Farnum does not argue that either the denial of training
or his alleged comments constitute "nothing more than what a
reasonable victim of discrimination would consider petty slights
and trivial inconveniences," Mihalik v. Credit Agricole Cheuvreux
N. Am., Inc., supra, 715 F.3d at 111; nor does he argue that
there was any legitimate, non-discriminatory reason for these
acts.  Rather, as discussed above, Farnum simply ignores the
differences between the NYCHRL and Title VII and instead argues,
using Title VII standards, that these alleged actions are not
materially adverse and do not constitute the severe and pervasive
conduct necessary for a Title VII hostile work environment.

Metro. Transp. Auth., supra, 8 F. Supp. 3d at 380, quoting Leon
v. Columbia Univ. Med. Ctr., 11 Civ. 8559 (NSR), 2013 WL 6669415
at *11 (S.D.N.Y. Dec. 17, 2013) (Román, D.J.).  Here, plaintiff
has alleged that he was the only person of South Asian ancestry
working for the WCB, that he was subjected to remarks regarding
his race and national origin, and that Freeberg and Henry,
neither of whom are of South Asian ancestry, were given in-the-
field training that he did not receive.  Under the liberal
standard afforded to NYCHRL claims, this is sufficient.

Accordingly, I conclude that plaintiff has satisfied
the inference-of-discrimination prong under the NYCHRL and
recommend that Farnum's motion for summary judgment as to plain-
tiff's NYCHRL discrimination and hostile work environment claims
be denied.

### 5.  Plaintiff's Retaliation Claims

A retaliation claim under Title VII, the NYSHRL or
Section 1983 is subject to the same burden-shifting analysis as a
Title VII discrimination claim except that the elements of a
prima facie case are slightly different.  Summa v. Hofstra Univ.,
708 F.3d 115, 125 (2d Cir. 2013); Jute v. Hamilton Sundstrand
Corp., 420 F.3d 166, 173 (2d Cir. 2005).

> To make out a prima facie case of retaliation, a plaintiff must make four showings:  that "(1) []he engaged in a protected activity; (2) h[is] employer was aware of this activity; (3) the employer took adverse employment action against h[im]; and (4) a causal connection exists between the alleged adverse action and the protected activity."  [Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 608 (2d Cir. 2006)].  "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action."  Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001).  If the employer demonstrates a legitimate, non-discriminatory reason, then "[t]he burden shifts . . . back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation."  Id. at 625.

Summa v. Hofstra Univ., supra, 708 F.3d at 125.[17]

As is the case with NYCHRL discrimination claims, NYCHRL retaliation claims are to be construed more broadly than Title VII and NYSHRL retaliation claims.  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., supra, 715 F.3d at 112.

---

[17]Although, in the past, "there has been considerable confusion surrounding the viability of retaliation claims under § 1983," the Court of Appeals for the Second Circuit recently clarified that "a state employee may bring a retaliation claim under § 1983 against a supervisor who, acting under color of law, retaliates against him for opposing discrimination in the terms of his employment."  Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at 82.  In such cases, "the elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII."  Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at 91.  Because defendants do not dispute that Farnum was acting under color of law, the same analysis that applies to his Title VII and NYSHRL retaliation claims also applies to his Section 1983 retaliation claim.

Here, defendants argue that they are entitled to summary judgment dismissing plaintiff's retaliation claims because plaintiff cannot establish that (1) he engaged in any protected activity, (2) there is a causal connection between his letters to the WCB and the decision to terminate his employment and (3) defendants' legitimate, non-retaliatory reason for his termination was pretextual.

   a.  Protected Activity

A protected activity is "an action taken to protest or oppose statutorily prohibited discrimination." Wright v. Monroe Cmty. Hosp., 493 F. App'x 233, 236 (2d Cir. 2012) (summary order) (internal quotation marks and citation omitted).  In order to establish participation in a protected activity, "the plaintiff need not establish that the conduct []he opposed was actually a violation of Title VII, but only that []he possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998) (citations and quotation marks omitted).  However, "[m]ere subjective good faith belief is insufficient[;] the belief must be reasonable and characterized by objective good faith."  Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs., P.C., 716 F.3d 10, 16 (2d

Cir. 2013) (brackets and emphasis in original), quoting
Sullivan-Weaver v. N.Y. Power Auth., 114 F. Supp. 2d 240, 243
(S.D.N.Y. 2000) (Brieant, D.J.).

Additionally, the employee also must establish that
"the employer was aware of [the protected] activity."
Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., supra, 136 F.3d
at 292.  The Supreme Court has recently clarified that, "[w]hen
an employee communicates to h[is] employer a belief that the
employer has engaged in . . . a form of employment discrimina-
tion, that communication virtually always constitutes the em-
ployee's opposition to the activity."  Littlejohn v. City of New
York, 795 F.3d 297, 317 (2d Cir. 2015) (brackets, ellipsis and
emphasis in original), quoting Crawford v. Metro. Gov't of
Nashville & Davidson Cty., 555 U.S. 271, 276 (2009).  Nonethe-
less, "[a]lthough particular words such as 'discrimination' are
certainly not required to put an employer on notice of a pro-
tected complaint, neither are they sufficient to do so if nothing
. . . suggests that the complained-of activity is, in fact,
unlawfully discriminatory."  Kelly v. Howard I. Shapiro & Assocs.
Consulting Eng'rs., P.C., supra, 716 F.3d at 17.

Here, plaintiff sent four letters to the WCB between
April 12 and 15, 2008, in which he expressly stated that he
feared he would be subjected to harassment and retaliation upon

56

his return from medical leave and complained that Farnum's first probationary report was colored by Farnum's discriminatory animus against plaintiff on the basis of his race, national origin, age and disability (Defs. 56.1 Stmt., ¶¶ 56-60; Siudzinski Decl., Ex. HH, at DEF 479).  Plaintiff also sent a letter to the WCB on April 27, 2008 that stated that he had been "insulted as coming from the third world" (Siudzinski Decl., Ex. II, at DEF 468).  A fact finder could reasonably conclude that these complaints constitute protected activities of which the WCB was aware. Crawford v. Metro. Gov't of Nashville & Davidson Cty., supra, 555 U.S. at 276.

Defendants argue, however, that even if the letters written between April 12 and 15, 2008 constitute protected activities, plaintiff cannot establish that he acted with subjective good faith when he wrote them.  In support of this argument, defendants point to the fact that, in two of the letters written prior to plaintiff's return from leave in which plaintiff complained of discrimination and retaliation, he also requested "a normal work environment and relationship as that [which] existed before my absence from work" (Siudzinski Decl., Ex. GG; see also Siudzinski Decl., Ex. HH).  Defendants argue that this request "discredit[s] the notion that plaintiff was acting in good faith

when he claims that he was discriminated against" (Pl. Memo, at 15).

First, while defendants' argument may indeed be compelling before a jury, "[a] district court should resist drawing fact inferences in summary judgment situations, particularly where, as here, intent is at issue." Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984); accord Lipton v. Nature Co., 71 F.3d 464, 472 (2d Cir. 1995) ("[C]ourts are generally reluctant to dispose of a case on summary judgment when mental state is at issue."). Second, defendants' argument ignores plaintiff's April 27, 2008 letter to the WCB, which was drafted following plaintiff's return from leave, in which plaintiff stated that he had been "insulted as coming from the third world" (Siudzinski Decl., Ex. II, at DEF 468).  Therefore, I conclude that plaintiff's statement that he desired "a normal work environment and relationship as that [which] existed before my absence from work" is not so compelling as to preclude a reasonable jury from finding that he was acting in good faith when he complained of discrimination.

b.  Causal Connection

Proof of causal connection between a protected activity and an adverse employment action "can be established indirectly

by showing that the protected activity was followed closely by discriminatory treatment . . . or <u>directly</u> through evidence of retaliatory animus directed against a plaintiff by the defendant." <u>Cook v. CBS, Inc.</u>, 47 F. App'x 594, 596 (2d Cir. 2002) (summary order) (emphasis in original), <u>quoting</u> <u>DeCintio v. Westchester Cty. Med. Ctr.</u>, 821 F.2d 111, 115 (2d Cir. 1987).

Defendants argue that plaintiff cannot rely on the temporal proximity between his letters to the WCB in April 2008 and his termination in July 2008 because Farnum had initially recommended plaintiff's termination in February 2008 -- two months prior to plaintiff's engaging in any protected activity. In support of this argument plaintiffs rely primarily on <u>Clark Cty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 272 (2001) (<u>per curiam</u>), in which the Supreme Court observed that an employer's "proceeding along lines previously contemplated . . . is no evidence whatever of causality." <u>See</u> <u>also</u> <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); <u>Cheshire v. Paulson</u>, No. 04-CV-3884 FB LB, 2007 WL 1703180 at *6 (E.D.N.Y. June 12, 2007) (finding no causal connection where there was no direct evidence of retaliatory

animus and temporal proximity was belied by the fact that the
employer had imposed a course of discipline before the plaintiff
engaged in a protected activity and "did not change its course of
discipline afterwards"); Spadola v. N.Y.C. Transit Auth., 242 F.
Supp. 2d 284, 294-95 (S.D.N.Y. 2003) (Marrero, D.J.) (finding no
direct evidence of retaliatory animus and rejecting an inference
of retaliatory animus where defendant had begun an ongoing
internal disciplinary process procedure prior to any protected
activity).

     While these cases might possibly support defendants'
argument if temporal proximity were the sole basis for finding a
causal connection, they are distinguishable from the present case
because here plaintiff has adduced direct evidence of retaliatory
animus.

     Specifically, plaintiff alleges that on April 17, 2008,
his first day back from workers' compensation leave and a few
days after he wrote his first four letters complaining of dis-
crimination to the WCB, Farnum told plaintiff that plaintiff's
"days [at the WCB] were going to be numbered" (Pl. Memo, at 14).
More importantly, plaintiff also alleges that, at some point
after his reinstatement, Farnum pointed to the "several letters
[plaintiff sent] to the personnel official and said, [plaintiff]
may complain but no one is going to believe [plaintiff]" (Pl.

Memo, at 14-15).  While Farnum disputes that these comments were ever made, that does not change the fact that such statements, if true, are sufficient to establish a causal connection between plaintiff's protected activities and his termination.  Mandell v. County of Suffolk, 316 F.3d 368, 383-84 (2d Cir. 2003) (plaintiff established direct evidence of retaliatory animus where superiors told the plaintiff that he should learn to "keep his mouth shut" and that "baggage" from his testimony about antisemitism in the police department could adversely affect his career); White v. Dep't of Corr. Servs., 814 F. Supp. 2d 374, 390 (S.D.N.Y. 2011) (Koeltl, D.J.) (plaintiff's allegation that a supervisor "yelled at her and said he did not know what was wrong with her after he learned that she had filed a charge with the EEOC" was direct evidence of retaliatory animus).

Accordingly, viewed in the light most favorable to plaintiff, the evidence here could lead a reasonable jury to conclude that Farnum's second termination recommendation was motivated by retaliatory animus.

c.  Pretext

Defendants' final argument with respect to plain-tiff's retaliation claims is that they had a legitimate, non-retaliatory reason for terminating plaintiff's employment --

61

plaintiff's poor work performance -- and that plaintiff cannot demonstrate that that reason was merely pretextual.  As discussed in relation to plaintiff's discrimination claims, the evidence adduced by defendants of plaintiff's poor work performance is sufficient to initially rebut plaintiff's prima facie case. Genao v. Avon Salon & Spa, 06 Civ. 3667, 2008 WL 190605 at *5 (S.D.N.Y. Jan. 16, 2008) (Sweet, D.J.) ("Poor work performance is consistently recognized in this Circuit as a legitimate, non-discriminatory reason for termination in the retaliation context." (collecting cases)).

However, as discussed in Section III.B.4.a.iii, supra, plaintiff's poor work performance is based entirely on recommen- dations made and probationary reports completed by Farnum, and plaintiff alleges that Farnum's evaluations of his work were "[t]otally false" (Pl. Third Aff., at 21-25).  Therefore, for the same reasons that Farnum's comments to plaintiff upon his return from leave suffice to establish a prima facie case, they are also sufficient evidence for a reasonable jury to conclude that plaintiff's poor performance evaluations were merely pretextual, and that retaliatory and discriminatory animus was the actual motivation for Farnum's recommending plaintiff's termination. See Mandell v. County of Suffolk, supra, 316 F.3d at 384 (finding evidence of pretext in connection with a failure-to-promote

discrimination claim where the person who made the decision not to promote relied on recommendations by supervisors who "had made statements indicative of retaliatory animus"); White v. Dep't of Corr. Servs., supra, 814 F. Supp. 2d at 391 (finding evidence of pretext where there was direct evidence of retaliatory animus and the circumstances surrounding the issuance of counseling memoranda to the plaintiff were disputed).

Accordingly, I respectfully recommend that defendants' motion for summary judgment as to plaintiff's Title VII, NYSHRL, NYCHRL and Section 1983 retaliation claims be denied.[18]

IV. Conclusion

For all the foregoing reasons, I respectfully recommend that defendants' motion for summary judgment be granted as to plaintiff's Title VII, NYSHRL and Section 1983 hostile work environment claims and his Title VII, NYSHRL and Section 1983 claims arising out of adverse actions that occurred prior to his termination, and denied as to plaintiff's other claims.[19]

---

[18]Because I conclude that plaintiffs' retaliation claims survive summary judgment under the stricter Title VII, NYSHRL and Section 1983 standards, an independent analysis under the NYCHRL's broader standards is unnecessary.  Adams v. City of New York, supra, 837 F. Supp. 2d at 127.

[19]In his opposition papers, plaintiff also requests that his memorandum of law be "consider[ed] . . . a cross motion for
(continued...)

V.   Objections

          Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of

the Federal Rules of Civil Procedure, the parties shall have

fourteen (14) days from receipt of this Report to file written

objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and

responses thereto) shall be filed with the Clerk of the Court,

with courtesy copies delivered to the Chambers of the Honorable

Ronnie Abrams, United States District Judge, 40 Foley Square,

Room 2203, New York, New York 10007, and to the Chambers of the

undersigned, 500 Pearl Street, Room 750, New York, New York

10007.  Any requests for an extension of time for filing objec-

---

[19](...continued)
summary judgment" (Pl. Memo, at 29).  Given that plaintiff's
request is conclusory and supported by no legal citations, and
that defendants hotly contest plaintiff's evidence, which
consists almost entirely of his own recollection of events, I
recommend that plaintiff's cross motion for summary judgment also
be denied.

     Additionally, plaintiff's opposition papers appear to
request reconsideration of my Order, dated December 10, 2014
(D.I. 96), denying his request to compel the deposition of
Farnum, and my Order, dated December 14, 2015 (D.I. 152),
requesting reconsideration of a December 8, 2015 Order (D.I. 149)
in which I denied plaintiff's request for additional time to
respond to defendants' summary judgment motion.  Both the
December 10, 2014 Order and the December 8, 2015 Order were
affirmed on appeal by the Honorable Ronnie Abrams (Order, dated
May 27, 2015 (D.I. 111); Order, dated December 15, 2015 (D.I.
153)).  Accordingly, to the extent plaintiff requests
reconsideration of these Orders again, such motions should be
denied.

tions must be directed to Judge Abrams.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983) (per curiam).

Dated:  New York, New York
        February 9, 2016

Respectfully submitted,

HENRY PITMAN
United States Magistrate Judge


Copies mailed to:

Mr. Bernard W. Goonewardena
5 Tudor City Place (A-7)
New York, New York  10017

Anthony J. Tomari, Esq.
Michael A. Berg, Esq.
Michael J. Siudzinski, Esq.
Office of the Attorney General, New York State
120 Broadway
24th Floor
New York, New York  10271